## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: ) | | |
| JOHNNIE WALLER, ) | Case No. 15-92117-BHL | |
|    Debtor ) | | |
| _____ ) | | |
| JOHNNIE WALLER, ) | Adv. No. 16-_____ | |
|    Plaintiff ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| UNITED STATES DEPARTMENT ) | | |
| OF EDUCATION; AND, ) | | |
| ) | | |
| ITT TECHNICAL INSTITUTE ) | | |
| ) | | |
|    Defendants ) | | |
| _____ ) | | |

### COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOANS

This matter is before the Court on the Debtor-Plaintiff, Johnnie Waller's (hereafter "Waller"), Complaint against Defendants, United States Department of Education (hereafter "United States") and ITT Technical Institute (hereafter "ITT"). Debtor-Plaintiff Johnnie Waller, by counsel, James F. Guilfoyle, now states the following:

### Summary of the Case

Johnnie Waller is fifty-nine (59) years old, a veteran of the United States Navy, and a nearly thirty year employee of various department of corrections facilities across the country. Waller's wife passed away in 2006, and he had triple bypass heart surgery in 2007. These tragedies of life motivated

him to start anew, so Waller decided he wanted to move on from his career as a prison guard and become a probation officer. This move required a college degree.

With the promise of job opportunity and promotion, Waller made the fateful decision to finance his education and enrolled at ITT studying criminal justice. Waller continued to work full-time during school as a prison guard and maintained a 3.94 grade point average. Waller graduated in 2012 with a Bachelors of Science in Criminal Justice. He immediately began submitting applications in various states for probation officer appointments, but to no avail. The new monthly student loan payment arrived, but the promised job opportunities did not. Waller made payments of approximately $300.00 per month from June, 2013, to February, 2015, but he was forced to stop so he could pay for his basic life necessities. He works to this day as a prison guard making $27,000 per year.

Waller prays this Court find his student loan burden to be an undue hardship, and thus dischargeable under the United States Bankruptcy Code. Waller cannot afford the minimum interest payment on his student loan, he has made a good faith effort to pay his loans, and his circumstances will most certainly persist. To the extent the Court does not find undue hardship, Waller prays the Court deem ITT liable for the subject debt due to misrepresentations made at the time of Waller's enrollment. Waller deserves the relief offered by the Bankruptcy Code.

### Jurisdiction

1.   This is an Adversary Proceeding to determine the dischargeability of a debt under Title 11 of the United States Bankruptcy Code. The Court has jurisdiction over the matter pursuant to Title 28 of the United States Code, specifically sections 1334 and 157.

**Procedural History and Factual Background**

2.      On December 7, 2015, Waller sought relief under Chapter 7 of the United States Bankruptcy Code by filing his Voluntary Petition (hereafter "Petition"). Listed in Schedule F of the Petition is the aggregate burden of $70,000 in student loan debt. This balance originated with ITT and was backed by the United States Department of Education.

3.      Unlike most bankruptcies, this is a case meant to discharge student loan debt by proving "undue hardship" under 11 U.S.C. § 523(a)(8). Schedule F of the Petition contains only three nominal non-student loan debts; approximately $600.00 owed to three medical creditors. Waller intends to prove the following: (1) Waller's struggle meets and exceeds the threshold required of Section 523(a)(8) for student loan dischargeability; and, (2) Notwithstanding a finding of undue hardship, Waller should not be held liable on the student loan debt due to misrepresentations by ITT regarding post-graduation employment results and work related opportunity.

**Count I: Undue Hardship - Section 523(a)(8)**

4.      Section 523(a)(8) of the United States Bankruptcy Code requires a debtor to prove an educational loan presents an "undue hardship" on the debtor to qualify for discharge. "To determine which situations constitute an "undue hardship," [the Seventh Circuit] adopted the *Brunner* test for student loan discharge proceedings, which requires a debtor to show that: (1) [he] cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay [his] loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) [he] made good faith efforts to repay the loans." Tetzlaff v. Educ. Credit Mgmt. Corp., 794 F.3d 756, 758-59 (7th Cir. 2015), cert. denied, 136 S. Ct. 803, 193 L. Ed. 2d 712 (2016)"

5.  The matter before this Court meets and exceeds this threshold. On May 21, 1957, Waller was born in Iowa. He lived there until 1968, when his family moved to Kahoka, Missouri. At the age of 17, Waller enlisted in the United States Navy where he performed sonar work. After leaving the Navy he moved back to Iowa and worked in a rubber plant and steel mill.

6.  In 1978, Waller married his first wife, Kathryn. Soon thereafter they had two children. In 1985, Waller moved to Kansas due to job layoffs. Not long after the move, Waller's wife sadly left him and the two children. He was left to raise both children on his own.

7.  Waller continued to follow work across the country due to layoffs, which prompted his move to Brookfield, Missouri in 1987. Unfortunately, this was a very difficult period for his children, so at the behest of a counselor and in an attempt to find a better school system, Waller eventually moved his family to Hamilton, Illinois in 1988.

8.  Shortly after the move Waller fell in love and married Michelle. The move also marked the beginning of his career with the criminal justice system, as he started work as a guard for the Iowa State Maximum Penitentiary. Waller worked there for ten years, but due to a failing relationship with his wife who was abusive to his children, Waller was forced to again move his family.

9.  In 1999, the family landed in Faucett, Missouri, where Waller began working for the Missouri Department of Corrections. This is also where he met Connie, who turned out to be the love of his life. Thereafter, Waller continued to work in various correctional and law enforcement capacities. In 2005, Waller and Connie decided to move closer to his grandchildren, so they moved to Florida. Waller also began work for the Florida State Department of Corrections.

10. In August of 2006, Connie sadly passed away. Compounding this emotional tragedy was a triple bypass surgery Waller needed in February of 2007. After losing his wife and nearly his own life,

Waller decided to start anew. He wanted to move beyond the physical requirements of his job as a prison guard by becoming a probation officer. This move required a college degree, so in 2008, Waller made the fateful decision to go to college.

11. Waller enrolled at ITT pursuing a degree in criminal justice with the promise of career and promotion. He of course needed to finance this education, as he did not have the resources to pay his tuition. Said financing now amounts to approximately $70,000.00 in student loans.

12. In 2012, Waller graduated with honors and a 3.94 grade point average. He was awarded a Bachelors of Science in Criminal Justice. In May of 2013, Waller accepted a job with the Kentucky Department of Corrections as a prison guard, but with the hope of a promotion to probation officer. In June of 2013, Waller began his student loan repayment at approximately $300.00 per month.

13. After realizing a promotion was not in his future, Waller moved to the Indiana Department of Corrections, again with the hopes of becoming a probation officer. In February of 2015, the student loan payments were finally too much. Waller could no longer afford even the minimum payment demanded. To date, he still works as a prison guard making at or near a wage mirroring the poverty line.

14. Waller cannot afford the minimum payment on his student loans, his employment history and age indicate his circumstances will most certainly persist, and he has made a good faith effort to repay. Waller meets and exceeds the threshold demanded by *Brunner*, and should be thus entitled to discharge of his student loan indebtedness.

### Count II: Fraudulent Misrepresentation and/or Inducement

15. Waller should not be held liable for the educational loans at issue due to certain misrepresentations made by ITT relating to graduate employment and salary data. As explained

hereinabove, Waller enrolled at ITT pursuing a degree in criminal justice in 2008 with the goal of becoming a probation officer.

16. Specifically, at the time of enrollment, representatives of ITT presented employment and salary results as inducement to enroll and finance Waller's education. Upon Waller's decision to accept the loans, ITT facilitated the transaction through its loan program entitled PEAKS. Similar allegations posited by other former students have led to a class action lawsuit and enforcement action from the Consumer Financial Protection Bureau.

17. Had Waller been properly advised with accurate data, he would not have pursued this education. The singular reason for his educational pursuit was, at the minimum, the advertised career benefits. Unfortunately, however, those benefits never came to be. ITT misrepresented the reasonable opportunity presented by its degree programs. Now, Waller owns a degree that is not worth the paper it is printed on.

**SPACE INTENTIONALLY LEFT BLANK**

**Conclusion**

Waller prays this Court find his debt to the United States Department of Education be dischargeable, as he satisfies the threshold required by the Section 523(a)(8) undue hardship test. To the extent the Court finds Waller fails to satisfy the undue hardship analysis, Waller prays this Court find ITT Technical Institute liable for its fraudulent inducement associated with this loan, as Waller would not have pursued this education but for the inaccurate career opportunities presented to him.

WHEREFORE, Waller prays this Court enter judgment in his favor by deeming this debt dischargeable and for all other relief so determined.

Respectfully submitted,

/s/James F. Guilfoyle
_____

**James F. Guilfoyle**
Counsel for Plaintiff
IN (31328-10) & KY (96011)
431 E Court Ave.
Jeffersonville, IN 47130
james@guilfoylebankruptcy.com
james@guilfoylelawoffice.com
(812) 206-1840

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's System:

Trustee
Michael J. Walro
mwalro@madi.twcbc.com

US Trustee
ustpregion10.in.ecf@usdoj.gov

I further certify that on May 13, 2016, pursuant to Fed.R.Bankr.P. 7004(b)(3) and Fed.R.Bankr.P. 7004(h), a copy of the foregoing Complaint to Determine Dischargeability of Student Loans was mailed by CERTIFIED MAIL, postage prepaid, addressed as follows:

United States Department of Education
Office of General Counsel
400 Maryland Ave. SW, Rm. 6E353 Washington DC 20202

ITT Technical Institute
℅ Highest Ranking Officer
13000 N Meridian St
Carmel, IN 46032

United States Attorney
10 W Market St, Suite 2100
Indianapolis, IN 46204

                **/s/James F. Guilfoyle**

                **James F. Guilfoyle**
                Counsel for Plaintiff
                IN (31328-10) & KY (96011)
                431 E Court Ave.
                Jeffersonville, IN 47130
                james@guilfoylebankruptcy.com
                james@guilfoylelawoffice.com
                (812) 206-1840